# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

NATHAN A. COOK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: June 11, 2024
Date Decided: August 1, 2024

John G. Harris
Halloran Farkas + Kittila LLP
5722 Kennett Pike
Wilmington, Delaware 19807

Stephen C. Norman
Jaclyn C. Levy
Emma K. Diver
Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801

RE: *Former SARcode Shareholder LLC v. Novartis Pharma AG*
C.A. No. 2022-1053-NAC

Dear Counsel:

This letter addresses my ruling on the plaintiff's motion to vacate the prior judgment (the "Motion").[1] For the reasons below, I deny the Motion.

---

[1] *Former SARcode S'holder LLC v. Novartis Pharma AG*, C.A. No. 2022-1053-NAC, Docket ("Dkt.") 9 ("Am. Compl."). In its original filing on November 18, 2022, the plaintiff filed a "Petition to Vacate Prior Judgment" and listed itself and Novartis Pharma AG as the petitioner and the respondent, respectively. Dkt. 1, Pet. to Vacate Prior J. On April 26, 2023, the plaintiff filed what it labeled as its "Amended Petition to File a Motion to Vacate Judgment" and listed itself and Novartis Pharma AG as the plaintiff and the defendant, respectively. Dkt. 9, Am. Pet. to File a Mot. to Vacate J. Attached to the amended petition was a motion to vacate dismissal under Court of Chancery Rule 60(b)(2), which requires such a motion. Dkt. 11, Pl.'s Mot. to Vacate Dismissal. As exemplified in the plaintiff's petition and amended petition, the parties have used terms inconsistently in their filings. But in light of the pending motion before me and the most recent filings listing the parties as the plaintiff and the defendant, I will employ the terms "plaintiff," "defendant," and "motion," regardless of the inconsistent language the parties have used throughout the record.

## I.   FACTUAL BACKGROUND

For a more comprehensive factual background, I refer readers to the two prior memorandum opinions issued by this Court on August 9, 2017, and February 13, 2020.[2] This decision recites only the asserted facts necessary to resolve the Motion. The following facts are drawn from the pleadings, documents incorporated therein, and other documents subject to judicial notice.[3]

SARcode Bioscience Inc. ("SARcode"), a pharmaceutical development company incorporated in Delaware, developed a drug—Lifitegrast, which is sold commercially under the brand name Xiidra (the "Drug")—to treat dry eye disease. With high hopes for the Drug's regulatory approval and eventual commercial use, SARcode conducted phase II and phase III clinical trials to test the Drug's effectiveness and safety. Those clinical trials demonstrated that the Drug had significant potential.

On March 23, 2013, Shire US Holdings, Inc. ("Shire"), Owl Merger Sub, Inc.,

---

[2] *Fortis Advisors LLC v. Shire US Hldgs., Inc.* (*Shire I*), 2017 WL 3420751 (Del. Ch. Aug. 9, 2017); *Fortis Advisors LLC v. Shire US Hldgs., Inc.* (*Shire II*), 2020 WL 748660 (Del. Ch. Feb. 13, 2020). This litigation was originally filed in 2016 under a different docket number which ultimately culminated in the Court's decision in *Shire I*. The plaintiff then appealed the Court's decision before voluntarily dismissing the action. Soon thereafter, the plaintiff filed another action under a different docket number. The second litigation concluded with the Court's decision in *Shire II*. This action is therefore the third, and hopefully final, docket to resolve this dispute. I note that Rule 60 motions are usually filed in the same case and on the same docket that the party wants re-opened. Here, I held a status conference to discuss this with the parties. During the call, the plaintiff's counsel explained that the case was so old that it had been marked as administratively closed and could not be re-opened. For that reason, the plaintiff opened a new case in filing its petition. I questioned whether that was the administratively correct course of action. But since counsel for all parties requested that I nonetheless consider this as a Rule 60 motion, and in the interests of efficiency, I treat this as an extension of the prior litigation.

[3] *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004); *Franklin v. Glenhill Advisors LLC*, 2023 WL 569192, at *1 (Del. Ch. Jan. 27, 2023), *aff'd*, 304 A.3d 950 (Del. 2023).

SARcode, and Fortis Advisors LLC ("Fortis"), entered into an agreement whereby Shire would acquire SARcode and the Drug (the "Merger Agreement"). Under the Merger Agreement, if the Drug were to meet certain milestones, Fortis, acting as the SARcode stockholders' agent, would receive several contingent milestone payments. Specifically, the Merger Agreement conditioned the significant milestone payments on the Drug's performance in a second phase III clinical trial (the "Milestone Study").

The Milestone Study had two primary endpoints, one related to the symptoms of the eye disease and the other related to the signs of the eye disease. If the Drug were to meet both of its primary endpoints, Fortis would receive a $175 million milestone payment. Unfortunately for Fortis, the Drug achieved the co-primary symptom endpoint but had failed to achieve the co-primary sign endpoint in the Milestone Study.

On October 16, 2015, Fortis contacted Shire to request the $175 million milestone payment. Shire responded on November 12, 2015, stating that the milestone had not been met since the Drug failed to meet both endpoints during the Milestone Study. Under the Merger Agreement, Fortis had a right to review the information and data underlying the Milestone Study. These information rights vested when Shire denied Fortis the milestone payment.

Shire initiated a third phase III clinical trial and submitted a new drug application to the United States Food and Drug Administration (the "FDA") for approval. The third phase III clinical trial confirmed the Drug's viability, and the FDA subsequently approved the Drug. Fortis then contacted Shire to assert that Fortis was entitled to a $250 million payment due to the FDA's approval, another

milestone payment outlined in the Merger Agreement.

On March 29, 2016, Fortis filed its complaint in this Court, bringing a single claim against Shire for breach of the Merger Agreement for failing to pay the $425 million in contingent milestone payments. Shire moved to dismiss the complaint under Rule 12(b)(6). The parties then fully briefed Shire's motion to dismiss. On July 29, 2016, Fortis moved to amend its complaint and Shire opposed the motion. After a hearing, the Court granted Fortis leave to amend its complaint.

On November 8, 2016, Fortis filed its amended complaint which again listed only a single claim for breach of contract for failure to pay the milestone payments. On December 9, 2016, Shire again moved to dismiss. It argued that the Merger Agreement was unambiguous and that Fortis's claim relied on an unreasonable interpretation of the plain language of the Merger Agreement.

On August 9, 2017, this Court granted the motion, ruling that the Merger Agreement unambiguously conditioned the milestone payments on the Milestone Study achieving both of its primary endpoints (the "2017 Decision"). In light of the Milestone Study's failure to hit both endpoints, the milestone payments were "not due and will never become due."[4] In delivering the 2017 Decision, the Court observed that despite "Fortis argu[ing] that Shire has denied it access to the actual data from the [Milestone Study] . . . this is not the breach of contract claim Fortis brought in this action."[5]

---

[4] *Shire I*, 2017 WL 3420751, at *6.

[5] *Id.* at *10 n.41.

On September 8, 2017, Fortis filed a notice of appeal with the Delaware Supreme Court of the 2017 Decision, which Fortis subsequently withdrew. On September 28, 2017, Fortis received the raw data from the Milestone Study, the Milestone Study protocol, and the statistical analysis plan, in addition to other documents regarding the Milestone Study (the "Milestone Study Data"). This data was provided in a Microsoft Word document as opposed to its native form.

On January 24, 2018, Thomas Gadek, a co-founder of SARcode and the inventor of the Drug, received an email suggesting that the Milestone Study contained several errors regarding the Milestone Study's population. The email included p-values for several models, many of which were allegedly statistically significant once the asserted errors were corrected. On September 11, 2018, Fortis contacted Shire to express its concern regarding the Milestone Study population and requested additional information. Shire disputed Fortis's conclusions and declined to provide any additional documents.

On December 26, 2018, Fortis again sued Shire, this time to enforce its information rights under the Merger Agreement. Fortis asserted it had a right to the Milestone Study Data and other relevant information. Fortis brought two claims in this second action: (1) a claim for declaratory judgment that Shire was required to turn over the requested information pursuant to the information rights outlined in the Merger Agreement and (2) a breach of contract claim for Shire's failure to provide the requested information. Shire, for the third time, moved to dismiss under Rule 12(b)(6).

On February 13, 2020, this Court again granted Shire's motion to dismiss,

explaining that the claims were barred by *res judicata* (the "2020 Decision"). Although Fortis knew about its information rights and the Milestone Study Data's availability under the Merger Agreement, "Fortis made an apparent strategic choice not to pursue them."[6] Consequently, the vested information rights related to the transaction that was the subject of the first litigation, so the case was dismissed.[7]

Following the 2020 Decision, Shire sold the Drug and its related rights and obligations to Novartis Pharma AG ("Defendant"). Former SARcode Shareholder LLC ("Plaintiff") also replaced Fortis as the stockholders' agent. Thomas Gadek is a member of Plaintiff and is the signatory on Plaintiff's filings.

On November 18, 2022, Plaintiff requested that the Court vacate its prior dismissal of this case, citing Court of Chancery Rule 60(b)(2) for newly discovered evidence. Defendant opposed the request. On April 26, 2023, Plaintiff amended its filing and attached the Motion as an exhibit. The parties subsequently briefed the Motion. I heard oral argument on June 11, 2024.

## II.     LEGAL ANALYSIS

In reviewing a Rule 60 motion, courts "defer only to those facts [Plaintiff] alleged in [its] pleading and the reasonable inferences therefrom. The complaint and facts alleged [must be] sufficient to support a claim upon which relief may be granted."[8]

---

[6] *Shire II*, 2020 WL 748660, at *4.

[7] *Id.* at *5.

[8] *Franklin*, 2023 WL 569192, at *5 (internal quotation marks and citations omitted).

But "[b]ecause of the [Court's] significant interest in preserving the finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted."[9]  Indeed, "Delaware law is clear that reopening a judgment based on new evidence is disfavored. The decision whether to grant relief under Rule 60(b)(2) is committed to the sound discretion of the Court."[10]

To obtain relief under Rule 60(b)(2), the movant must "show [1] that the newly discovered evidence has come to [its] knowledge since the [judgment]; [2] that it could not, in the exercise of reasonable diligence, have been discovered for use [before the judgment]; [3] that it is so material and relevant that it will probably change the result if a new [judgment is rendered]; [4] that it is not merely cumulative or impeaching in character; and [5] that it is reasonably possible that the evidence will be produced at the trial."[11]  Plaintiff fails to satisfy the five elements required to grant a Rule 60 motion.

## A.    Previously Unknown

Plaintiff argues that its interpretation of the Milestone Study Data and statistically significant p-value constitute newly discovered evidence.

"A Rule 60(b) motion is not an opportunity for a do-over or an appeal."[12]  To

---

[9] *MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A.2d 625, 635 (Del. 2001).

[10] *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2018 WL 1254958, at *2 (Del. Ch. Mar. 12, 2018).

[11] *In re Missouri-Kansas Pipe Line Co.*, 2 A.2d 273, 278 (Del. 1938); *see also Okla. Firefighters*, 2018 WL 1254958, at *1.

[12] *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Gp. (Hldg.)*, 2012 WL 4847089, at *5 (Del. Ch. Oct. 11, 2012), *aff'd*, 67 A.3d 373 (Del. 2013).

that end, "the newly discovered evidence [must have] come to [the movant's] knowledge since the [judgment],"[13] and "the newly discovered evidence must have been in existence and hidden at the time of judgment."[14]

There is no debate that the raw Milestone Study Data existed long before the 2017 Decision. Not only did it exist, but all parties knew of its existence; no one was hiding the existence of the raw Milestone Study Data. The analysis can end there. Plaintiff fails to satisfy the first element of the Rule 60 test.

Plaintiff argues that the p-value created using the Milestone Study Data should amount to new evidence that was unknown prior to the litigation leading to the 2017 Decision. I recognize that analyzing data requires effort, but it is hard to believe that all permutations of a dataset remain unknown until they have been sliced and diced in every possible way. Especially in a field where researchers often disagree on what to include, and what to exclude, to arrive at the purest statistical analysis, it would be imprudent to allow revised statistical analysis to constitute "new evidence" that could potentially re-open every case that involved data interpretation.

Plaintiff stresses the "painstaking effort[s] of translating [the Milestone Study Data] from a Microsoft Word program file to a SAS-formatted document" and then the efforts required to examine those reformatted results, asserting that the heavy lift

---

[13] *In re Missouri-Kansas*, 2 A.2d at 278; *see also Okla. Firefighters*, 2018 WL 1254958, at *1.

[14] *Keen-Wik Ass'n v. Campisi*, 2020 WL 6162957, at *2 (Del. Ch. Oct. 19, 2020) (internal quotation marks and citations omitted).

caused the Milestone Study Data not to be truly available until this current action.[15] This technological hurdle, however, likewise could have been overcome in the first round of litigation had Fortis made the seemingly strategic decision to sue on its information rights.[16]

Plaintiff has neither identified a secret data set nor presented an unknown document that came to light long after the first litigation leading up to the 2017 Decision. Plaintiff has instead identified a potential error with a known data set that Plaintiff had a right to review under the Merger Agreement. This is neither unknown nor hidden evidence. As Defendant observed, this current action arose not from the discovery of new evidence but rather, "because Dr. Gadek is unhappy with the deliberate choices and strategy and outcomes achieved by his predecessor Fortis and its very experienced and very capable counsel."[17]

The Motion therefore fails the first element of the Rule 60 test.

**B.      Reasonable Diligence**

Even if the Motion satisfied the first element of the Rule 60(b) test, however, the Motion fails the second element.

In *In re U.S. Robotics Corp. Shareholder Litigation*, this Court found a movant was not reasonably diligent when it sought to introduce evidence that "could have

---

[15] Dkt. 46, June 11, 2024, Oral Arg. Tr. ("Tr.") 13:4–12.

[16] *See Shire II*, 2020 WL 748660, at *4.

[17] Tr. 21:8–11.

easily been discovered by class counsel through the discovery process."[18] The standard for reasonable diligence is demonstrated in *Norberg v. Security Storage Co. of Washington* where a Rule 60(b)(2) movant failed to depose a witness and then later filed a motion for relief from judgment when the movant was surprised by the testimony offered by the witness he failed to depose.[19] The Court observed that "[the movant] did not know how [the witness] would testify because he had not bothered to take his deposition while he had the opportunity to do so over several years."[20]

Like the litigant in *Norberg*, Fortis and Plaintiff were surprised at the Milestone Study Data simply because they "had not bothered"[21] to assert their information rights under the Merger Agreement and analyze the dataset prior to the 2017 Decision. But, as observed in the 2020 Decision, "Fortis made an apparent strategic choice not to pursue [the Milestone Study Data]" which was "knowable and known" in 2016 when Fortis first initiated the action that led to the present matter.[22]

Fortis knowingly brought a single claim for breach of the unambiguous Merger Agreement terms as it related to the milestone payments. It did *not* assert a claim to enforce its information rights, despite voicing concerns over those rights at the time. Indeed, during the first round of litigation, the Court noted that Fortis argued "that

---

[18] 1999 WL 160154, at *11 (Del. Ch. Mar. 15, 1999).

[19] 2002 WL 31821025, at *2–3 (Del. Ch. Dec. 9, 2002).

[20] *Id.* at *3.

[21] *Id.*

[22] *Shire II*, 2020 WL 748660, at *4; *see also* Tr. 18:13–19:6.

Shire ha[d] denied it access to the actual data from the [Milestone Study] even though it is contractually entitled to this data. According to Fortis, the actual data would allow it to determine if the results in the [Milestone Study] were, in fact, statistically significant."[23] But Fortis did not seek to exercise its information rights in the original complaint it filed on March 29, 2016, nor did it seek to enforce its information rights when it amended the complaint. Instead, Fortis put all its eggs in one basket by asserting a single breach of contract claim for failure to make the milestone payments.[24]

During oral argument on November 7, 2019, the Court cautioned against piecemeal litigation and even condemned the exact litigation structure Plaintiff is pursuing, citing the judicial principle of *res judicata*.[25] And ultimately, as the Court observed in the 2020 Decision, Fortis had already litigated its case and Fortis's information rights indisputably vested when Fortis was denied the milestone payments prior to the first litigation. But for one reason or another, Fortis chose to focus its litigation in the original action on a breach of contract claim arising from the non-payment of milestone payments instead of on its information rights.[26] Plaintiff now regrets that decision.

---

[23] *Shire I*, 2017 WL 3420751, at *10 n.41.

[24] The Court stated in the 2017 Decision that while Fortis could have brought a claim for information rights, "this is not the breach of contract claim Fortis brought in th[e] action." *Id.*

[25] Tr. 19:16–20:17 (noting then-Vice Chancellor Slights' comments from the November 7, 2019, hearing).

[26] *Shire II*, 2020 WL 748660, at *4.

But litigators' remorse does not give rise to new evidence, nor does it cause previously available evidence to be deemed hidden. The Motion must therefore be denied for failure to satisfy the first two elements of the Rule 60(b)(2) test.

## C.     Additional Considerations

Even assuming the Motion satisfied all five elements of Rule 60(b)(2), I would still conclude the Motion must be denied as untimely. Although there is no bright line rule for when a party must seek vacatur once new evidence comes to light, this Court has held that "an unreasonable delay [alone] is sufficient grounds to dismiss [a Rule 60(b)] action."[27] Delaware courts have routinely denied relief sought close to a year after new evidence came to light.[28] Plaintiff is litigating over the interpretation of the only known data set from a 2013 study, a data set to which Fortis had information rights and where Plaintiff actually received and analyzed the data in September and October of 2017. Plaintiff also produced an email in this action dated January 24, 2018 that asserts the same proposition made in this Motion—Plaintiff and Fortis believed Shire misinterpreted the Milestone Study Data.[29] The parties have known the data existed for over a decade, Plaintiff and its predecessor received access to that data nearly seven years ago (albeit in a form that required some elbow grease to

---

[27] *Franklin*, 2023 WL 569192, at *7.

[28] *See Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 247 A.3d 229, 256–57 (Del. 2021) (denying relief after a twelve month delay); *Schremp v. Marvel*, 405 A.2d 119, 121 (Del. 1979) (denying relief after a nine month delay); *Franklin*, 2023 WL 569192, at *5 (denying relief after a twenty five month delay); *In re U.S. Robotics*, 1999 WL 160154, at *1–2, *8 (denying relief after a thirteen month delay).

[29] Am. Compl. Ex. P.

interpret), and Plaintiff and its predecessor became aware of the potentially misstated p-values over six years ago. Yet Plaintiff is now attempting to assert all of this constitutes new evidence. I recognize that Rule 60 motions are fact-specific, but litigants must bring Rule 60 motions in a timely manner. The Motion is therefore untimely.

It is worth also pointing out here the previously aligned interests of the parties and Delaware's interest in preserving the finality of judgments. First, as this Court explained in the 2017 Decision, the notion that Shire would have, "against its interest," falsely reported a lack of statistical significance to the FDA seems "remarkable[.]"[30] That Shire and Plaintiff's interests were aligned throughout the Milestone Study and FDA approval process likely further colors my analysis.

Second, and quite importantly, Delaware has a "significant interest in preserving the finality of judgments[.]"[31] This is one of the themes behind *res judicata*–the ultimate reason the 2020 Decision came out the way it did.[32]

Plaintiff is no doubt asking itself—*What if?* Plaintiff's predecessor litigated this case and made decisions that may appear to Plaintiff less than ideal in the rearview mirror. But hindsight is 20/20.

## D. Fee Shifting

Defendant asks that I shift fees and require Plaintiff to bear the cost of this

---

[30] *Shire I*, 2017 WL 3420751, at *10 n.41.

[31] *MCA, Inc.*, 785 A.2d at 635.

[32] *See Shire II*, 2020 WL 748660, at *4–5.

final round of litigation in its entirety.

"Under the American Rule, absent express statutory language to the contrary, each party is normally obligated to pay only his or her own attorneys' fees, whatever the outcome of the litigation."[33] "[A]n award of fees for bad faith conduct must derive from either the commencement of an action in bad faith or bad faith conduct taken during litigation, and not from conduct that gave rise to the underlying cause of action."[34] Fee shifting for bad faith conduct "applies in only extraordinary cases" and is often only present when "parties have unnecessarily prolonged or delayed litigation, falsified records, or knowingly asserted frivolous claims."[35]

Defendant categorizes this litigation as "vexatious"[36] and an improper "***third bite*** at the apple."[37] I agree. In the 2020 Decision, this Court confirmed that there is nothing left to litigate in this matter.[38] Yet Plaintiff failed even to mention the 2020 Decision in its original filing,[39] and Defendant compares this third action to Plaintiff speeding "through the Court's stop sign[,]" which the 2020 Decision planted firmly in

---

[33] *Johnston v. Arbitrium (Cayman Is.) Handels AG*, 720 A.2d 542, 545 (Del. 1998).

[34] *Versata Enters., Inc. v. Selectica, Inc.*, 5 A.3d 586, 607 (Del. 2010) (internal quotation marks and citations omitted).

[35] *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816, 877 (Del. 2015) (internal quotation marks and citations omitted).

[36] Tr. 29:15.

[37] Dkt. 27, Def.'s Mem. of Law in Opp'n to Pet. to Vacate Prior J. at 3 (emphasis in original).

[38] *Shire II*, 2020 WL 748660, at *3.

[39] *See* Dkt. 1, Pet. to Vacate Prior J.

the ground.[40]  Plaintiff's disregard of the 2020 Decision and Plaintiff's indifference to the costs its actions impose on Defendant and the Court merit the shifting of attorney's fees for unnecessarily "prolong[ing] or delay[ing] litigation."[41]  This Court does not condone "repeated nonmeritorious filings and tactical claim splitting [for plaintiff] to get multiple bites at the apple."[42]

At oral argument on June 11, 2024, Defendant presented a coherent and convincing legal argument, while Plaintiff merely repeated the facts of the case without offering substantive legal argument supporting the Motion.[43]

The Court's doors are open to redress injustice, but they are not revolving doors to be used for unending, vexatious litigation.  Plaintiff filed the Motion with as much discretion as one might exercise fishing an already-scratched lottery ticket from the bin, hoping against all odds for a windfall.  Such behavior is misplaced in this Court and disregards the cost it imposes on the other side and on the state.

I therefore grant Defendant's request to shift attorneys' fees.  Plaintiff shall bear all reasonable costs incurred in this unnecessary, and hopefully final, chapter of this litigation trilogy.

---

[40] Tr. 30:14.

[41] *RBC Cap. Mkts.*, 129 A.3d at 877.

[42] Tr. 29:21–23.

[43] *See id.* 16:2–7.

## III.     CONCLUSION

For the reasons described in this ruling, I deny the Motion and grant Defendant's request to shift fees.  The parties are directed to confer and provide a form of order implementing this decision.  The implementing order shall include a process for Defendant to submit its Rule 88 fee affidavit and Plaintiff to submit any objections thereto.

Sincerely,

*/s/ Nathan A. Cook*

Vice Chancellor